108 F.3d 1377
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clay W. LONG, Defendant-Appellant.
 No. 95-6647.
 United States Court of Appeals, Sixth Circuit.
 March 19, 1997.
 
 Before: WELLFORD, DAUGHTREY and MOORE, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 Defendant Clay W. Long was charged in a three-count indictment with (1) knowingly receiving by mail visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2); (2) receiving obscene material knowing the material to have been imported contrary to law in violation of 18 U.S.C. § 545 and 19 U.S.C. § 1305; and (3) knowingly possessing three or more visual depictions of minors engaging in sexually explicit conduct, which depictions had been mailed and transported in interstate and foreign commerce in violation of 18 U.S.C. § 2252(a)(4)(B). A jury convicted Long on count one, and acquitted him on counts two and three. The district court sentenced Long, and he now appeals his conviction on the single count. On appeal, he argues that the district court erroneously admitted certain expert testimony regarding the ages of the participants in the pornographic materials, and that the evidence was insufficient to convict him on count one.
 
 
 2
 Defendant Long, thirty-two years of age at the time of the indictment, claimed in his testimony that he vacationed in Australia sometime in 1989 or 1990. Because of an admitted interest in "porn materials," Long visited an adult book store in Australia, where he purchased a magazine called "Seventeen," which is published in the Netherlands. Long, allegedly believing that the magazine was legal to possess, brought it back to the United States and voluntarily presented it to a Customs official who allowed Long to keep it. After arriving back at his Louisville residence, Long ordered a subscription to that magazine. He subsequently received a flyer from a publisher advertising videos for sale, and Long ordered several of them at a cost of about 80 American dollars per video.[1] Two of the videos, entitled "Teenage Pleasure" and "Keyhole Teens," were the subjects of counts one and two of the indictment.
 
 
 3
 Before Long took possession of the video tapes in question, he received the following letter from the Department of the Treasury, United States Customs Service, that a "pornographic video" had been intercepted pursuant to 19 U.S.C. § 1305:
 
 Dear Sir:
 
 4
 Customs examination of the below-described importation has disclosed that it contains merchandise which is considered to be obscene and, therefore, subject to Custom's seizure as required by Section 305 of the Tariff Act of 1930, as amended in 19 U.S.C. Section 1305. The merchandise consists of the following items: one pornographic video--Country of Origin--The Netherlands.
 
 
 5
 The facts available to U.S. Customs Service indicates that you have an interest in the seized material. The purpose of this letter is to advise you of the options available to you concerning the seizure.
 
 
 6
 (1) You may choose to take no action. If you take no action at this time, the matter will be promptly referred to the United States Attorney's Office for the institution of a civil action against the seized items, asking the Court to order a forfeiture of the seized items to the United States. ..., or
 
 
 7
 (2) You may consent to Custom's administrative forfeiture of the items by signing and returning the following consent to the administrative forfeiture form. You will be consenting or agreeing to the administrative forfeiture and destruction of the seized items. In other words, you will be asking that this matter not be referred to a Court for judicial determination....
 
 
 8
 Long maintained that he had sent only one order for the video tapes, and that he logically concluded from the letter that the government had examined the tapes, had concerns about only one of them, and expressly desired to have that matter resolved civilly. Unfortunately, the government concedes that the letter had been mailed to Long by administrative mistake. ("The letter is not supposed to be sent when a criminal investigation is conducted." Govt's Brief at 5.)
 
 
 9
 Subsequently, the subject videos were intercepted by a postal inspector in Chicago in August, 1991, and sent to special agent Brian Falvey in Kentucky for viewing.[2] Agent Falvey attempted to view the tapes in his office, but discovered that the two tapes were electronically formatted for playback on European VCR units only. Agent Falvey located a specially formatted VCR unit at the University of Louisville, reviewed the tapes, and believed that several people depicted in the tapes were under eighteen years old. He then obtained a federal warrant authorizing a search of Long's residence for the video tapes "Keyholes Teens" and "Teenage Pleasure" after arranging for their controlled delivery. He also sought to seize any other films, tapes, books, or magazines depicting minors engaged in explicit sexual conduct.
 
 
 10
 In any event, a postal inspector, posing as a mailman, delivered the tapes to Long, who signed for them and stated that he had been expecting them. Long specifically asked Kahn if the tapes had cleared Customs. Kahn responded that he did not know what was inside, he "just delivered them." As Kahn was leaving, Long questioned whether he "wasn't an FBI agent."
 
 
 11
 Shortly thereafter, Customs agents executed their search warrant. Long, apparently referring to the earlier letter, told the agents that "if you're here for the tapes, they're over on the counter." The agents found the open packages where Long had indicated. They also found other pornographic materials, apparently from the same Amsterdam source, allegedly depicting what also appeared to them to be minors. Although Long had attempted to view the video tapes before the agents arrived, he was unable to do so because he did not have a specially formatted VCR. Long told the agents that he had received the earlier letter, and advised them that the whole thing must have been a mistake. Long further told Falvey that he believed the tapes had cleared Customs and were, therefore, legal to possess.
 
 
 12
 After the search and seizure of the tapes and magazines, a Customs agent sought the opinion of Dr. Robert Shapiro, a Cincinnati pediatrician, on whether any of the persons depicted on the tapes were under eighteen years of age. Dr. Shapiro was apparently sought out by the government because of his training as a pediatrician, and because of his experience in using the Tanner scale, a methodology used to help doctors measure the stages of puberty in a child. After viewing "Keyhole Teens" and "Teenage Pleasures," Dr. Shapiro wrote a letter which stated that he could not determine "that any of the individuals shown in this material are under the age of 18 years. All are physically, sexually mature, and there are no distinguishing physical characteristics that identify them as under 18 years old."
 
 
 13
 The government then sought a second opinion from a Dr. Robert Granacher, who had been a medical doctor since about 1973 and a forensic psychiatrist practicing in Lexington, Kentucky. Dr. Granacher's experience includes, among other things, teaching a medical school course on human sexuality at the University of Kentucky. Though not previously called upon to testify in federal court on this subject, Dr. Granacher's opinions on the ages of individuals had been relied upon in previous cases. Dr. Granacher found several individuals depicted in the video tapes and magazines to be minors, utilizing the Tanner scale in his detailed testimony. Additionally, although Dr. Shapiro had stated in his letter that he could not determine that the models in the pornographic materials were under the age of eighteen, he testified and opined that one of the individuals in "Keyhole Teens" was likely under eighteen.
 
 
 14
 The jury found Long guilty as charged of knowingly receiving by mail the two tapes of visual depictions of minors engaging in sexually explicit conduct. The court sentenced Long to seventeen months imprisonment, two years supervised release, a $64,935.81 fine, and a $50.00 special penalty assessment.
 
 
 15
 As indicated above, the jury found Long guilty of count one, receiving by mail visual depictions of minors engaging in sexually explicit conduct. Long argues in that connection that the district court committed error in allowing Dr. Granacher to testify as an expert concerning the ages of the models. We find no error in the conclusion of the magistrate judge, which was adopted by the district court, that expert testimony on the ages of the video participants does not invade the province of the jury. See United States v. Nolan, 818 F.2d 1015, 1018 (1st Cir.1987) (court allowed government to use expert testimony to show age of minors in pornographic materials); United States v. Villard, 700 F.Supp. 803, 814 (D.N.J.1988) (finding that an expert "can analyze the [pornographic material] and give an expert opinion as to the age of the individual"). With respect to Dr. Granacher's testimony, we find that he had sufficient qualifications to give testimony regarding the ages of persons portrayed in the material in question. We also conclude that it was not error to permit Dr. Granacher's testimony regarding the methodology used to give an opinion, or for the jury to arrive at a conclusion concerning the ages of the models, actresses, or subjects portrayed. In addition, the testimony of Dr. Shapiro, a pediatrician expert, although certainly not strong, was an additional basis for the jury's determination of age. The jury itself, of course, might make its own determination of age based on the evidence and on the juror's own experience in a case of this type.
 
 
 16
 The question remains, however, under the unusual circumstances of this case (defendant did not actually see the video tapes in question before his arrest), whether the government proved by the requisite burden that the elements of count one were met.[3] In reviewing the sufficiency of the evidence, we have considered the evidence as a whole taken in a light most favorable to the government, together with all legitimate inferences therefrom. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Woods, 877 F.2d 477, 479 (6th Cir.1989); United States v. Nolan, 818 F.2d at 1017.
 
 
 17
 The district court charged the jury that the government must prove beyond a reasonable doubt that Long "knowingly received, by United States mail, two video cassettes which contained visual depiction of minors engaged in sexually explicit conduct." Specifically, the district court indicated four showings that must be made:
 
 
 18
 First: That Clay W. Long knowingly received a visual depiction of a minor engaging in sexually explicit conduct;
 
 
 19
 Second: That Clay W. Long knew the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct;
 
 
 20
 Third: That such visual depiction did, in fact, involve the use of a minor engaging in sexually explicit conduct; and
 
 
 21
 Fourth: That the visual depiction was sent through the United States mail.
 
 
 22
 Further, the district judge charged that the government was required to prove that "Long knew beyond a reasonable doubt that the production of the visual depiction involved the use of at least one person under the age of eighteen engaging in sexually explicit conduct."[4]
 
 
 23
 Long claims that, even if Granacher's testimony were admissible, there was still insufficient evidence that he knew that anyone in the videos were minors. He claims that:
 
 
 24
 (1) There was no proof, as claimed by the prosecutor, that the Netherlands was a "source country for pornography;"
 
 
 25
 (2) "Teens" and "Teenage" descriptions of the filmed material does not exclude conduct of eighteen and nineteen year-olds, and he had no opportunity to view the actual tapes;
 
 
 26
 (3) The August, 1991 letter indicated government seizure only of one video tape from the Netherlands and that letter affected Long's state of mind.
 
 
 27
 We believe that it was proper to admit testimony establishing that the Netherlands was a known "source" for materials of this kind, even though such evidence was not necessary for a conviction. We also conclude that Long's receipt of the "mistake" letter from the Customs Department did not preclude a jury finding that he knew the nature of the contents of the tapes when he received them. Furthermore, Long was warned in the order form itself that the materials or "sendings" might be "captured" by police or Customs officials. The order form included other titles such as "Seventeen's School Girl," "Summer Camp/Zoomer Camp," "Teeners from Holland," suggesting that the Dutch teenagers portrayed were of school and summer camp age. There is no serious question but that explicit sexual conduct was advertised in each of the "offerings," and on the jackets of each of the videos. Indeed, the jackets of the video tapes themselves depict sexually explicit conduct and persons who may or may not have been minors.[5]
 
 
 28
 In addition, the following facts about other circumstances involved in the case were set out by the magistrate judge, and our examination of the record reflects no error in this regard:
 
 
 29
 The mailing envelope of the tape disclosed that it was mailed from Amsterdam in the Netherlands. On the front outer casing of the tape was the title, "Keyhole Teens." The name, "Seventeen," was printed on the top left side of the outer casing. Printed on the bottom of the front outer casing were the words, "You're Key to 14 Candid Amateur Teenies, Volume 3." On the front casing was the picture of two young females, allegedly with their breasts and genitalia exposed. On the back side of the outer casing were nine photos of nude, or partially nude, young females, along with the following text:
 
 
 30
 Peer into a forbidden teenage world: twelve very young, but extremely randy girls show themselves for the very first time in front of the camera. Real amateur items, full of candid shots of real school girls who send their little cunts from one orgasm to the other using fingers, vibrators and sexy toys. You won't keep your pants dry!
 
 
 31
 (Emphasis added.)
 
 
 32
 On inspection, the tape was entitled, "Teenage Pleasure." The front outer casing of the tape contained the word, "Seventeen," on the top. Beneath the word, "Seventeen," was a picture of allegedly young male and female models engaged in masturbation, oral sodomy and anal intercourse. Beneath the picture on the front outer casing were the captions, "7 Teenagers in Horny Action!," "Lesbian Sex," and "Anal Sex." The back side of the outer casing allegedly depicted male and female models engaged in oral sodomy, anal intercourse, masturbation and lesbianism, with the caption:
 
 
 33
 Take a peek into the erotic world of teenagers. A sparkling teenager film of horny action. Lustfully, young teenagers [sic] girls turn their boyfriends on, leading them to explosive orgasms!
 
 
 34
 (Emphasis added.)
 
 
 35
 Although certainly not an easy issue, we are satisfied that a rational trier of fact was justified in finding that the tapes "involved the use of a minor," and that the actresses or performers were engaged in sexually explicit conduct in each of the video tapes in question or on the jackets containing the tapes.[6] Also, the evidence was sufficient to show that Long knew about the ages of the participants and about the type of conduct portrayed by virtue of the descriptions, the jacket illustrations, and the warnings on the order forms.
 
 
 36
 The very magazines from which Long ordered the materials, which were also a subject of the indictment, purported to show teenagers engaged in sexually explicit conduct. The district court and jury had a right to consider the totality of the circumstances as to whether the ordered and mailed materials in question were produced to utilize minors engaging in sexually explicit conduct. It was not inappropriate to consider the circumstances of the order, the delivery and receipt, the materials described by the magistrate judge in which the tapes arrived, and the other materials possessed by the defendant.
 
 
 37
 This case has presented us with difficulties beyond the usual circumstances in cases of this kind: the jury acquitted defendant of several related charges; defendant did not actually view the videos before arrest; the government erred in sending out the letter; and the "experts" identified only a few tape participants who were under age. We have taken these problems into account, however, in reaching a hard decision that there was no error in the conviction on count one.
 
 
 38
 We conclude that none of Long's contentions, fully presented and argued before the district court and jury, precluded his conviction. Accordingly, we AFFIRM Long's conviction.
 
 
 
 [1]
 The order form from "Club 17" contained this disclaimer:
 Please note that Seventeen does not take any responsibility in case sendings are captured by police of [sic] customs officials! PAYMENT: In cash (via registered mail!) or by Euro Cheque if amount is over Dfl. 100. Please write cheque in Dutch currency and send it to: [address].
 
 
 [2]
 Title 19 U.S.C. § 1305 authorizes, among other things, the seizure of imported obscene materials for forfeiture or destruction thereof under specified procedures
 
 
 [3]
 Long was charged with "knowingly receiv[ing] ... any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce ... if ... the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct [and] such visual depiction is of such conduct." 18 U.S.C. § 2252(a)(2)
 
 
 [4]
 The district court emphasized that this burden of proof was both "strict" and "heavy."
 
 
 [5]
 Long also argued that the district court plainly erred in failing to give a "defense theory" jury instruction based on his mindset resulting from the "mistake" letter sent to him by the Customs Department. We reject that argument, finding that the jury instructions adequately presented his defense and did not impair his theory of the case
 
 
 [6]
 We are unsure whether Dr. Granacher or Dr. Shapiro testified concerning the ages of the young women who appeared in the pictures on the jackets in which the tapes were encompassed. We are also unsure whether the young females depicted in various explicitly sexual poses on the jackets are the same ones shown on the tapes themselves. Despite this uncertainty, the proof is more than sufficient, in our opinion, that Long well knew the nature of the materials ordered and received by him; that they involved sexually explicit conduct, and that they involved females who were "amateurs," "real school girls," "young teenagers" or "very young teenagers."