**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  05a0549n.06**
**Filed:  June 24, 2005**

**No. 04-3274**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff-Appellee,** | **ON APPEAL FROM THE** |
| | **UNITED STATES DISTRICT** |
| **v.** | **COURT FOR THE NORTHERN** |
| | **DISTRICT OF OHIO** |
| **ROBERT A. NODA,** | |
| **Defendant-Appellant.** | |

_____/

Before: BOGGS, Chief Judge; GILMAN, Circuit Judge; and CLELAND,[*] District Judge.

CLELAND, District Judge.  Robert A. Noda appeals his convictions for aiding and abetting the receipt and the possession of child pornography by computer under 18 U.S.C. § 2252(a). Because he fails to demonstrate error in the lower court proceedings, we affirm his convictions. We vacate Noda's sentence, however, because it violates the Sixth Amendment, and remand to the district court for resentencing.

**I.**

On April 16, 2003, Special Agent Gabriel Hagan of the Bureau of Immigration and Customs Enforcement filed an application and supporting affidavit with a federal magistrate judge seeking a search warrant for Noda's residence at 1844 Meadows Road, Madison, Ohio where Noda lived with co-defendant Lynette Toth and their daughter, who was approximately ten years old at the time.

_____

[*] Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

Special Agent Hagan's affidavit linked Noda's residence with her investigation of certain federal child pornography crimes, including violations of the law regarding the production, importation, distribution, and knowing receipt of child pornography as defined by 18 U.S.C. § 2256. Hagan's affidavit offered significantly detailed testimony in support of a search warrant for Noda's residence, which the magistrate judge authorized. A few of the important facts contained in the search warrant affidavit are summarized below.

After testifying about her background, training, and eleven years of experience investigating federal crimes relating to the production, distribution, and receipt of child pornography, Hagan identified the basis for her request for a warrant to search the particular location described. Hagan stated that, on April 11, 2003, she met with a Geauga County Sheriff's Department confidential source. The source had previously been incarcerated and had a criminal history. According to a sheriff's department detective, however, this source had provided accurate and truthful information relating to his past criminal activity.

The confidential source stated that he had lived with Noda and Toth at 1844 Meadows Road from approximately April 2000 through December 2001. The source relayed to Hagan information concerning the activities in the house during his time living with Noda. He explained that it was common practice for Noda and Toth to host parties of twenty or more people. The party-goers ranged in age between 12 and 24. The source had personal knowledge that the minors at these parties were consuming alcohol and that everyone at the parties, including the minors, engaged in sexually explicit conduct.

According to the source, Noda would inject people, including minors, with Nubain, a

2

synthetic narcotic, without their consent, and he and Toth would then videotape the sexually explicit conduct. Noda would "plug the video camera directly into the computer located in [his] bedroom, and . . . download the recorded sexual activity onto his computer." The source indicated that he had personally observed Noda and Toth produce images and movies of sexually explicit conduct involving approximately 20 to 30 minors, approximately 30 to 60 times while he resided at Noda's home.

The confidential source described two computers in Noda's residence and stated that his bedroom was equipped with an alarm system. Noda would allegedly spend large amounts of time locked in his bedroom on his computer and the source stated that he personally observed Noda log onto child pornography websites via the Internet. Noda allegedly had a paid subscription to certain "Lolita" websites. The affidavit further explains that the source obtained password access to Noda's computer and observed a stored image of Noda and his daughter (seven years old at the time) engaged in sexually explicit conduct.

The source indicated that he had observed Noda copy images of child pornography on to compact discs ("CDs") for an individual named "Rick," residing in Eastlake, Ohio. The source also possessed information that there were two telephone lines in the 1844 Meadows Road residence. The telephone line in Noda's bedroom was in "Rick's" name and paid for by this individual. Independent information from Alltel Communications telephone records established that Mr. Rick Daniels of 7697 Hidden Valley Dr., Kirkland, Ohio paid for a second phone line at Noda's residence.

The source's information was also based on two visits to Noda's residence much closer in time to the April 16, 2003 search warrant application. First, on March 28, 2003, the source visited

the residence and observed that Noda had acquired a third computer, a DVD burner, and camera equipment. He also noticed approximately 1,000 compact discs that Noda had produced. The source remembered the presence of about twenty people in the home, including a fourteen-year-old girl. According to the source, a number of men present were attempting to induce the girl into a state of intoxication in order to have sex with her. He explained that this behavior on March 28, 2003 was consistent with the behavior he had observed while living at the home from April 2000 to December 2001. Second, on April 11, 2003, the source visited the home, at the initiation of Toth. During this visit, occurring days before the warrant application, Toth stated that the source had "missed out on a lot of new pictures" and that "nothing's changed, it's still the same around here."

Hagan also interviewed a second confidential source from the Geauga County Sheriff's Department before making application for the search warrant. This second source described witnessing similar, sexually explicit conduct involving minors at Noda's residence in the summer of 2000 and in August of 2001. The second source also visited Noda's home on April 11, 2003 and heard Toth state that both sources had "missed a lot of pictures." The source also noticed a number of mobile alarm units throughout the house.

On April 17, 2003, agents from the Bureau of Immigration and Customs Enforcement and local police executed the federal search warrant for Noda's home, seizing four computers, computer equipment, and accessories, and recovering over six hundred CDs, floppy disks, over one thousand VHS tapes, sex toys, books, magazines, cameras, documents, pictures and other items. A majority of the CDs were recovered from Noda's bedroom. Later examination of Noda's computer hard drive and CDs seized from his bedroom revealed about 250 images of child pornography on the hard drive

4

and about 2250 images of child pornography on twenty-one of the CDs.

Prior to trial, Noda and co-defendant Toth filed a joint motion to suppress evidence seized during the search of Noda's home and his e-mail accounts. On October 27, 2003, the district court denied the motion in a short form order. On that same day, however, the co-defendants filed an additional brief in support of their original motion and the district court subsequently issued a second, more detailed, memorandum opinion and order denying the motion. The district court found the supplemental arguments to be without merit, ruling that the defendants were not entitled to an evidentiary hearing and that probable cause supported the magistrate judge's decision.

During trial, the government introduced various physical exhibits and presented testimony from nine witnesses, including Ms. Donna Abbott, a licensed pediatric nurse practitioner. Ms. Abbott testified as an expert concerning the ages of the children depicted in the government's exhibits, opining that many of the images depicted pre-pubescent children. Co-Defendant Firestone also testified that he and Noda shared a mutual interest in computers and that Noda had informed him about an Internet newsgroup site containing images of child pornography. Firestone testified that he downloaded about 1000 images of child pornography from this newsgroup over a period of several months, copied them onto CDs, and gave them to Noda, who in turn provided them to Rick Daniels.

Co-defendant Toth, after entering a guilty plea, testified as a government witness. She stated that she and Noda had a daughter together and that she had lived with Noda for approximately fourteen years. Toth explained that the computer in Noda's bedroom had Internet access and was the only computer accessing the home's second phone line. She stated that in October 2002, a high-speed cable modem was installed for the computer kept in Noda's bedroom.

5

According to Toth, Rick Daniels visited Noda once or twice a month, often spending time in Noda's bedroom going through pictures. Toth also testified that she had observed a photo on Noda's computer which appeared to be a young female and she commented that the girl looked young. Noda responded that he was downloading pictures for Daniels.

Noda presented testimony from four witnesses. Alicia Harmon, Denver Roger Carey, and Charles Barnes all testified that they never witnessed Noda download child pornography from the Internet, never saw Noda possess child pornography, and never heard him even discuss the subject matter. Both Harmon and Carey stayed at Noda's home, while Barnes was a friend of Noda's who asked Noda to help him with computer related issues.

Noda also testified on his own behalf, explaining that he received social security benefits but earned extra income on the side repairing and building computers. Noda's chief defense was that he had never before seen the pornographic images recovered by the police. He denied having any knowledge of the child pornography found on his computer or on the CDs in his residence. According to Noda, thousands of people used his computer, and his computer did not require a password to obtain access. He testified that one individual using his computer stole his mail and information from his computer to fraudulently use his credit accounts.

Noda explained that he reformatted others' computers using his own and that, during this process, he would transfer data from computers owned by others. He would, however, keep this foreign or outside material on his computer even after his reformatting was complete. Noda testified that he did not look at the information or files taken from these other computers despite the fact that he continued to store this material on his own hard drives based on his "invasion of privacy" concerns. Noda claimed that two to three hundred individuals used his computer to burn CDs.

6

He acknowledged that Rick Daniels was his friend and that he had fixed and otherwise assisted in the operations of Daniels's personal computers. He stated that Daniels paid for the second phone line in the home so that he could contact Noda. Noda denied that he and Daniels reached an agreement where Daniels would pay for the phone line in exchange for Noda's downloading of child pornography. Noda testified that he never downloaded child pornography for Daniels, but did agree to download some adult pornography. Noda denied ever downloading or maintaining possession of child pornography. He also denied ever providing such material to Daniels. He stated that such images made him sick, and that he had viewed one picture of child pornography shown to him by Perry Firestone.

## II.

Noda asserts four defects with the proceedings below. First, he argues that the district court erred in denying his motion to suppress evidence. Second, he argues that the district court abused its discretion by permitting the government's pediatric nurse practitioner to testify regarding the ages of the children depicted in the images introduced at trial. Third, Noda argues that his trial counsel was ineffective. Fourth, he asserts that the lower court's sentence, and its factual findings made to support a two-level enhancement for obstruction of justice under U.S.S.G. § 3B1.1, violated the Sixth Amendment.

We find no error in denying Noda's motion to suppress, or in the admission of expert witness testimony on the ages of the children depicted in the pornographic images; we decline to address Noda's ineffective assistance claims on direct review; and we remand for resentencing in light of *United States v. Booker*, -- U.S. --, 125 S. Ct. 738 (2005).

7

**A.**

The ultimate question of whether a search was reasonable under the Fourth Amendment is subject to *de novo* review. *United States v. Spikes*, 158 F.3d 913, 922-23 (6th Cir. 1998). We conduct a *de novo* review of a district court's legal conclusions concerning a motion to suppress, but review the district court's findings of fact for clear error. *Id.* at 922. The evidence presented below "must be viewed in a light most favorable to the party that prevailed in the district court." *Id.*

Noda argues that the district court erred in finding probable cause to support a search warrant because the information used to establish probable cause was stale and because that the affiant improperly cited unreliable confidential sources. Neither argument is persuasive. The record demonstrates that the magistrate judge had a substantial basis to support his finding of probable cause and there is no indication that the magistrate judge arbitrarily exercised his authority. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (reflecting a strong preference for the pre-screening function of the warrant process, and stating that "the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more") (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)); *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

We review the sufficiency of an affidavit underlying a search warrant following the principles laid down by the Supreme Court in *Illinois v. Gates*. *Allen*, 211 F.3d at 972. In *Gates*, the Court rejected the rigid tests applied by many federal courts in favor of a "totality of the circumstances" approach. *Gates*, 462 U.S. at 230–31. We must weigh all of the evidence presented

8

in the affidavit in each case to resolve the "commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id*. at 230.

Whether the information in a search warrant affidavit is stale is determined on the circumstances in each case. *Spikes,* 158 F.3d at 923. Courts considering a challenge to a warrant application based on staleness look at the following variables: (1) the inherent nature or character of the crime; (2) whether the criminal is nomadic or entrenched; (3) whether the items to be seized are perishable or easily transferable; and (4) whether the place to be searched is a mere criminal forum of convenience or a secure operational base for criminal conduct. *Id*.

The length of time between events described in an affidavit and the application for a warrant is salient, but not controlling. *Id.* (citing *Sgro v. United States*, 287 U.S. 206, 210-11 (1932)). The purpose of a staleness inquiry in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate. *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988). We have found that "even if a significant period has elapsed since a defendant's last reported criminal activity, it is still possible that, depending on the nature of the crime, a magistrate may properly infer that evidence of wrongdoing is still to be found on the premises." *Spikes*, 158 F.3d at 923. Probable cause may be found were there is an indication of a continuing pattern of criminal activity and where recent information corroborates otherwise stale information. *Id.* at 923-24.

The confidential sources identified by Special Agent Hagan described an ongoing pattern of sexual exploitation of children observed at Noda's residence. The first source also presented more recent testimony corroborating the events that he personally observed from April 2000 through December 2001. On March 28, 2003, approximately one month before the search warrant

9

application, the first confidential source visited Noda's residence where he observed computers, computer equipment, and cameras. He also observed about 20 people present at the residence, with some of them attempting to intoxicate a fourteen-year-old girl so that they might have sexual relations with her. This more recent behavior was consistent with the conduct observed while the source lived at Noda's residence.

Both confidential sources visited Noda's residence on April 11, 2003, approximately one week before the search warrant affidavit was sworn. During this visit, co-defendant Toth informed the sources that they had "missed out on a lot of new pictures" and that "nothing's changed, it's still the same around here." One source noticed mobile alarms present in the house, including on Noda's bedroom door, suggesting that Noda was entrenched and maintaining a secure base for his criminal activity. Hagan also testified, based on her experience and training, that individuals who produce, obtain, and possess child pornography are likely to retain these materials for an extended period of time. *See United States v. Lawson*, 999 F.2d 985, 987 (6th Cir. 1993) ("A judicial officer may give considerable weight to 'the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found.'") (quoting *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987)). Because there was a sufficient basis to support a finding of an ongoing pattern of criminal activity and sufficient recent corroboration that such activity continued at Noda's residence in March and April 2003, the magistrate judge was permitted to rely on the information contained in the warrant application in finding probable cause and issuing the search warrant.

It is also well established that a magistrate may rely on hearsay evidence in making his probable cause determination. *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (citing *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) and *United States v. Weaver*, 99 F.3d 1372,

10

1377 (6th Cir. 1996)). When confronted with hearsay information from a confidential informant or an anonymous tipster, the court should consider three factors in giving the information its due weight within the totality of the circumstances inquiry: (1) the veracity of the tipster; (2) the reliability of the tip and tipster; and (3) the tipster's basis of knowledge. *See Helton*, 314 F.3d at 819. These three factors, however, should not be applied rigidly as a test, but should be considered in weighing all of the circumstances. *Allen*, 211 F.3d at 975 ("As the Court observed in *Gates*, tests and prongs have an unfortunate tendency to develop a life of their own, and tend to draw more attention to their individual characteristics than to the totality of the circumstances."). Although these three factors are applied to anonymous and confidential tips, the court's main inquiry in examining probable cause centers on the totality of circumstances. *Gates*, 462 U.S. at 232.

We find that the totality of the circumstances supported a finding of probable cause, notwithstanding Hagan's failure to personally attest to the reliability of either source. Another law enforcement officer informed Hagan that the first confidential source had provided reliable information in the past, and the veracity and reliability of this source may be inferred from his provision of correct information regarding the individual paying for a second phone line at Noda's home. This information was corroborated by using independent phone records, tending to show that the confidential source was providing accurate information. The sources' bases of knowledge also suggest reliability of the information conveyed. The statements made to Hagan were based on personal observations made by the sources while they lived at or visited Noda's residence over an extended period of time.

We also find Noda's argument that probable cause is undermined because only Toth initiated the more recent visits by the sources unpersuasive. Toth's statements made to the sources during

11

the 2003 visits provided a recent nexus between *the location* to be searched and the suspected ongoing criminal activity. The warrant was issued to search Noda's residence, not his person. The absence of any reference to conversations in 2003 with Noda personally, therefore, does not undercut Toth's statement tying the residence to the suspected criminal activity.

**B.**

A district court's evidentiary rulings, including a decision to permit expert testimony, are subject to an abuse of discretion standard of review. *Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002); *United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997) (challenge to the admission of expert testimony reviewed for an abuse of discretion). We find no abuse of discretion in the admission of the government's expert witness's testimony regarding the ages of the children depicted in the pornographic images introduced at trial.

We, along with several of our sister circuits, have permitted expert testimony on the ages of children depicted to be introduced in child pornography cases and find no error in the admission of testimony from the well-qualified expert in this case. *See United States v. Farrelly*, 389 F.3d 649, 653 (6th Cir. 2004) (testimony not challenged on appeal, but government expert witness provided opinion that pornographic images were of children under thirteen); *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001) (district court did not abuse its discretion in permitting well-qualified physician to testify as expert regarding the ages of children in pornographic photos, magazines and videos); *United States v. Anderton*, 136 F.3d 747, 750 (11th Cir. 1998) (competing medical expert testimony offered on ages of persons depicted); *United States v. Broyles*, 37 F.3d 1314, 1316 (8th Cir. 1994) (pediatric endocrinologist offered expert testimony on age in child pornography case); *United States v. Nolan*, 818 F.2d 1015, 1018 (1st Cir. 1987) (court permitted use of expert testimony

12

to show age of minors in pornographic materials); *United States v. Fuller*, 77 Fed. App'x. 371, 376 (6th Cir. 2003) (pediatric endocrinologist testified that images depicted minor females at or below Tanner stage four (average age 13)); *United States v. Long*, No. 95-6647, 1997 WL 130079, at *3 (6th Cir. Mar. 19, 1997) (finding no error in allowing medical doctor utilizing Tanner scale and experience to testify regarding ages of models used in sexually explicit material).

## C.

Generally, we refuse to review ineffective assistance claims on direct appeal. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002). As explained by the Supreme Court, when a court examines such a claim on direct appeal, "appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Massaro v. United States*, 538 U.S. 500, 504-05 (2003). We will consider ineffective assistance claims on direct appeal only when the record is sufficient to assess the merits of the defendant's allegations. *United States v. Rahal*, 191 F.3d 642, 645 (6th Cir. 1999).

Both parties suggest that the record is adequate to address the claims of ineffective assistance of counsel. We, however, find that the record is not sufficiently developed to review Noda's claims of ineffective assistance of counsel on direct appeal.

If facts about the impugned attorney's decision-making process and strategy must be determined to resolve the claims of inadequate representation, the record is not adequate. *Crowe*, 291 F.3d at 886 (citing *United States v. Earle*, No. 97-3171, 1998 WL 465350, at *3 (6th Cir. July 28, 1998)). Here, Noda argues that his trial counsel was ineffective in several respects, including his lawyer's failure to mount a defense or present expert testimony based on the Supreme Court's

13

decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). In *Free Speech Coalition*, the Court ruled that a provision of the Child Pornography Prevention Act of 1996 that prohibited any visual depiction that "is or appears to be, of a minor engaging in sexually explicit conduct" was unconstitutional. 535 U.S. at 258; 18 U.S.C. § 2256(8)(B). The Court determined that the statutory provision at issue was overbroad because it criminalized images where children were not exploited, such as computer generated images or the use of child-like but over-age actors. 535 U.S. at 250-55.

In *United States v. Farrelly*, we held that *Free Speech Coalition* "does not require the Government to do more . . . than present the images [of child pornography] to the jury for a determination that the depictions were of actual children." *Farrelly*, 389 F.3d at 652. The *Farrelly* court assumed for argument's sake that the government had the burden to prove that the images supporting a charge under 18 U.S.C. § 2252A(a)(5)(B) were of actual children. *Id.* at 653.

The record here lacks specific evidence concerning trial counsel's reasons for not presenting such an alternative defense and for not calling an expert to testify regarding whether the images might be computer generated rather than images of actual children. The reasons why Noda's trial attorney decided not to challenge the evidence as failing to depict actual children would require us to consider facts pertaining to the strategy and decision-making process of the attorney and is therefore more appropriately reviewed under 28 U.S.C. § 2255. *See United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) (refusing to consider on direct review ineffective assistance claim based on trial attorney's failure to call expert witness during trial). Accordingly, we find no persuasive reason to depart from our general rule disfavoring resolution of ineffective assistance claims on direct appeal.

14

**D.**

This court applies plain error review in cases where a defendant's sentence was imposed in violation of the Sixth Amendment as explained in *Booker. United States v. McDaniel*, 398 F.3d 540, 547-50 (6th Cir. 2005). Such an error requires a remand for resentencing. *Id.* In addition, we presume prejudice as to guideline sentences imposed before *Booker* was decided, absent explicit record evidence to rebut that presumption. *United States v. Barnett,* 398 F.3d 516, 527 (6th Cir. 2005).

Here, the district court made specific factual findings supporting its determination that Noda committed perjury, supporting a two-level increase in the offense level for obstruction of justice. The adjustment increased Noda's adjusted offense level from 30 to 32, resulting in a guideline sentencing range of 121-151 months instead of 97-121 months. This increase, based on the district court's own factual findings under then-mandatory Guidelines, constitutes plain error warranting a remand for resentencing. *See United States v. Bowman*, 126 Fed. App'x. 251, 255 (6th Cir. 2005) (plain error for district court to impose a two-level increase for obstruction of justice based on finding that defendant committed perjury, where jury verdict implied that the jury did not believe defendant, but jury's verdict could not serve as finding of willfulness required for perjury offense under 18 U.S.C. § 1621.).

**III.**

For the foregoing reasons, we affirm Noda's convictions, but vacate his sentence and remand for resentencing.