

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD86349 consolidated with WD86350 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| TIMOTHY EDWARD MCWILLIAMS, | ) | July 23, 2024 |
| | ) | |
| Appellant. | ) | |
| | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
**Honorable Jeff Harris, Judge**

**Before Division Two: W. Douglas Thomson, Presiding Judge,**
**Karen King Mitchell, Judge, and Janet Sutton, Judge**

Timothy Edward McWilliams (McWilliams) appeals two judgments[1] from the Boone County Circuit Court (trial court) convicting him of first-degree child molestation, first-degree statutory sodomy, sexual exploitation of a minor, and possession of child pornography. McWilliams argues that the trial court abused its discretion in denying his motion to dismiss for prosecutorial vindictiveness, for overruling his objection and admitting a photograph from an

---

[1] Two underlying criminal cases, 18BA-CR04235-01 and 22BA-CR02828-01, were joined for trial and the trial court entered two judgments. On appeal we consolidated these cases upon McWilliams's motion.

interview with Victim into evidence, and for overruling his objection to certain expert witness testimony. We affirm the trial court's judgments.

## Factual Background

McWilliams was initially charged in case number 14BA-CR04471-01 with first-degree child molestation, for subjecting Victim, who was less than fourteen years old, to sexual contact by "touching [Victim's] genitalia with an object," occurring on or between December 22, 2014, and December 23, 2014. McWilliams was convicted after a jury trial and he appealed. *State v. McWilliams*, 564 S.W.3d 618 (Mo. App. W.D. 2018). (*McWilliams I*).

In *McWilliams I*, McWilliams argued that the trial court erred in allowing the State to question an expert witness, the forensic interviewer, about Victim's ability to give idiosyncratic detail and the ages at which children are most likely to be susceptible to coaching and to lie. *Id.* at 623-24. McWilliams contended that the expert's responses to those questions invaded the province of the jury and improperly bolstered Victim's credibility. *Id.* at 624. We held that the expert's testimony was improper and the trial court abused its discretion in allowing it. *Id.* at 629. We commented that, when the testimony was read as a whole, "the State was asking [the forensic interviewer] to comment on [Victim]'s credibility" and it "was designed to buoy and lend credibility to [Victim]'s testimony[.]" *Id.* We also concluded that because the remaining evidence of McWilliams's guilt was not overwhelming, McWilliams was prejudiced by the admission of the improper testimony. *Id.* at 630. McWilliams's defense relied greatly on the jury finding Victim lacked credibility, and, because of Victim's "difficulty" on the stand, the forensic interviewer's testimony was "paramount" to the State's case. *Id.* Without the forensic interviewer's testimony buttressing Victim's testimony, McWilliams's defense became much

2

more effective. *Id.* Thus, we reversed McWilliams's conviction and remanded for a new trial. *Id.* at 633.

In May 2019, after our opinion and remand in *McWilliams I*, a grand jury indicted McWilliams in case number 18BA-CR04235-01 with two additional charges involving a different victim. Then, in that case in July 2019, the State subsequently filed a substitute information adding the initial 2014 first-degree child molestation charge of Victim from *McWilliams I*.

In August 2022, in case number 22BA-CR02828-01, a grand jury indicted McWilliams with the following charges: first-degree statutory sodomy, for having deviate sexual intercourse with Victim, who was under twelve years old, by touching his hand to her genitals, occurring on or about November 7, 2014; sexual exploitation of a minor, for creating child pornography of a person under fourteen years old, by photographing his hand touching Victim's genitals, occurring on or about November 7, 2014; and possession of child pornography, namely a photograph of McWilliams's hand touching Victim's genitals, a person less than eighteen years old, occurring on or about December 3, 2014. Case 18BA-CR04235-01 and 22BA-CR02828-01 were joined upon the State's motion. McWilliams was indicted on these charges after law enforcement obtained a search warrant in March 2022 to examine the electronic devices seized from McWilliams's house pursuant to a 2014 search warrant and additional criminal offenses were discovered.

In April 2023, in case number 18BA-CR04235-01, the State then dismissed the two charges involving the different victim, leaving only the original 2014 charge from that case as well as the three charges in 22BA-CR02828-01. McWilliams filed a motion to dismiss the three newer charges on the basis of prosecutorial vindictiveness, arguing that the State had access and

3

the ability to search the electronic devices at the time of the original investigation, and that the State chose only to file the additional charges after McWilliams successfully exercised his right to appeal. At the pretrial hearing on the motion, the State contended that it did not act vindictively because it did not increase the previously charged count but only added the additional charges after the State became aware of the additional wrongdoing. The State maintained that it conducted the additional investigation of the devices seized in an attempt to discover more evidence in response to this Court's comment on direct appeal that the evidence against McWilliams was not overwhelming. The trial court denied the motion in a docket entry.

In April 2023, following McWilliams's unsuccessful motion to dismiss, McWilliams was tried on the original 2014 charge from *McWilliams I* as well as the three charges in 22BA-CR02828-01. Viewed in the light most favorable to the verdict, the evidence at the jury trial showed:

McWilliams was "like family" to Victim's Mother and kids "clung to him" and "loved him." McWilliams visited Victim many times, and "she would sit on his lap" and McWilliams would play with her. In August 2014, when Victim was six years old, Mother and Victim moved into McWilliams's house as a "last resort," because Mother was experiencing financial difficulties. McWilliams "insisted" on Victim having the front bedroom and Mother thought it did not really matter because Victim "always" slept with Mother and it was very hard to get Victim to sleep in her own bed. Mother was given her own room in the back of the house.

Shortly after moving in, Mother noticed holes in the wall of Victim's bedroom. Two of the bigger holes went all the way through to the adjoining bathroom. The holes made Mother "leery" so she put cotton balls inside the holes on the bathroom side to cover them. Then, after

4

returning to the house after a day or two away, Mother noticed that her bedroom had a hole in the wall that also went all the way through, to the closet area in McWilliams's bedroom.

McWilliams told Mother that Victim was old enough to be in her own room and McWilliams made it "a big point" for Victim to sleep in her own bedroom. Mother did not understand why McWilliams "was so determined to have [Victim] in that room."

Around December 23, 2014, Victim told Mother that she had a secret she needed to tell Mother. Victim told Mother that the previous night, McWilliams touched her "private area" with what Victim described as a broken toothbrush. Mother recalled that the previous night she was out of the house from around 6:00 to 8:00 p.m. Victim had stayed with McWilliams at the house while Mother was gone. When Mother returned, she noticed that Victim had changed her clothes, which she felt was unusual, because Victim generally did not change her own clothing.

After Victim disclosed the abuse, Mother did not know what to do about the situation because most of Mother's and Victim's belongings were at McWilliams's house. Mother did send Victim to stay with other relatives. At some point, Victim wrote McWilliams a note that said she hoped McWilliams would not touch her again. Mother called the police on December 29, and she took Victim to the Boone County Sheriff's Department. Deputy A.P. (Deputy) conducted a cursory interview of Victim.

On December 31, 2014, law enforcement obtained and executed a search warrant at McWilliams's house. In addition to observing and photographing holes in the walls, police recovered disks, storage drives, McWilliams's laptop computer, and his cell phone.

In early January 2015, after police executed the 2014 search warrant at the residence, Mother went to McWilliams's house to pack her belongings. Mother found a "vibrating

5

object/toothbrush" in McWilliams's bedroom on top of his desk behind other items and Mother brought it to the police.

Several years later, in March 2022 after *McWilliams I*, law enforcement obtained the 2022 search warrant to examine the electronic devices seized from McWilliams's house in 2014, including a laptop and a cell phone. Detective C.B. (Detective) conducted the digital examinations of both the laptop and the cellphone. A photograph found on the laptop was of "a prepubescent female's vagina with what appeared to be an adult hand touching that vagina," and this photograph was admitted as Exhibit 48 and published to the jury. Detective testified that the metadata from the photograph revealed that it was taken at about 5:00 p.m. on November 7, 2014, and then it was transferred to the laptop at about 11:30 p.m. that night. This photograph was taken with McWilliams's cell phone that was seized from his residence. Victim was about six years old when the photograph was taken. Mother and Victim had moved into McWilliams's house in August 2014, and generally, no other children visited the house at this time, except for when Mother's boyfriend brought his daughters over with him who were between the ages of ten and thirteen. The laptop and cell phone were both identified as belonging to McWilliams and were password protected.

The analysis of McWilliams's laptop revealed various search terms used to look online for child pornography. These terms on McWilliams's laptop included "kindergarten sex" and "illegal little girl," in addition to other extremely graphic terms.

Victim testified at trial that McWilliams "touched [her] inappropriately" on her vagina. McWilliams testified in his own defense and he denied touching Victim, taking the photograph, or using his computer to search for child pornography. McWilliams testified that he broke his left pinky finger in a car accident in 2010, around four years before the child-pornography photo

6

was taken.  McWilliams stated that, as a result of the accident, his left pinky was crooked and positioned at an angle, and therefore, it could not have been his hand in the photo.  Exhibits 54 and 55, screenshots taken from McWilliams's Facebook page depicting photos of him from 2015, showed, as the State argued, that McWilliams's left pinky was not crooked.  McWilliams also denied making holes in the walls to look at anyone.

The jury found McWilliams guilty as charged of first-degree child molestation, first-degree statutory sodomy, sexual exploitation of a minor, and possession of child pornography. The trial court sentenced McWilliams to thirteen years' imprisonment on the first-degree child molestation charge, fifteen years' imprisonment on the first-degree statutory sodomy charge, fifteen years' imprisonment on the sexual exploitation of a minor charge, and seven years' imprisonment on the child-pornography charge, all of which were ordered to run consecutively, for a total sentence of fifty years.

McWilliams appeals.

## Legal Analysis

### Point I: Motion to Dismiss

In McWilliams's first point, he argues that the trial court abused its discretion in denying his motion to dismiss the three additional counts related to Victim that were charged after this Court granted him a new trial in *McWilliams I*.  McWilliams claims the additional charges amounted to prosecutorial vindictiveness against him for exercising his right to seek a new trial on the original charge.

"We review a trial court's ruling on a motion to dismiss a charging instrument for an abuse of discretion." *State v. Turner*, 683 S.W.3d 709, 717 (Mo. App. W.D. 2023).  The due process clause of the Fourteenth Amendment prevents a prosecuting attorney from acting

vindictively to punish a criminal defendant for exercising a right. *State ex rel. Becker v. Wood*, 611 S.W.3d 510, 514 (Mo. banc 2020) (citing *Blackledge v. Perry*, 417 U.S. 21, 28 (1974)). *See also State v. Sapien*, 337 S.W.3d 72, 78 (Mo. App. W.D. 2011). The defendant initially has the burden to show that there is a realistic likelihood of vindictiveness. *State v. Juarez*, 26 S.W.3d 346, 354 (Mo. App. W.D. 2000).

"A presumption of vindictiveness is established when 'the facts show a realistic likelihood of vindictiveness in the prosecutor's augmentation of charges.'" *Becker*, 611 S.W.3d at 514 (quoting *State v. Gardner*, 8 S.W.3d 66, 70 (Mo. banc 1999)). Courts weigh two factors: "(1) the prosecutor's stake in deterring the exercise of some right, and (2) the prosecutor's conduct." *Id. See also Juarez*, 26 S.W.3d at 354. "Only after vindictiveness has been established, either through the presumption or by objective evidence, is the State burdened with the task of defending the charge through objective, on-the-record explanations of the State's rationale." *Becker*, 611 S.W.3d at 514. *See also Gardner*, 8 S.W.3d at 70; *Sapien*, 337 S.W.3d at 78-79; *Juarez*, 26 S.W.3d at 354.

As *Becker* acknowledged, "A prosecutor will likely always have some stake in deterring a defendant from asserting his or her right to trial by jury—e.g., lowering the risk of acquittal." 611 S.W.3d at 515. "Typically, the State's conduct supports a presumption of vindictiveness when there has been a successful appeal or grant of retrial, and the State responds by seeking an enhanced or new charge." *Id. See also State v. Cayson*, 747 S.W.2d 155, 157 (Mo. App. W.D. 1987) (finding a realistic likelihood of vindictiveness existed when a defendant was granted a new trial and the State dismissed the second-degree robbery charge and obtained an indictment for first-degree robbery); *State v. Potts*, 181 S.W.3d 228, 236-37 (Mo. App. S.D. 2005) (finding a realistic likelihood of vindictiveness where the State filed a greater charge of possession of a

8

controlled substance with intent to distribute following the grant of defendant's request for mistrial).

After weighing the prosecutor's stake in deterring an exercise of the right to an appeal, and the prosecutor's conduct in this case, we do not find a realistic likelihood of vindictiveness. Although in this case there was a grant of a retrial on appeal, the facts of this case are clearly distinguishable from the cases mentioned above in which courts have found a reasonable likelihood of vindictiveness. A search of the electronic devices recovered from McWilliams's residence was not completed until after McWilliams's conviction was reversed on appeal and this Court granted a new trial. The 2014 search warrant only authorized the seizure of the electronic devices from McWilliams's residence and did not expressly authorize further examination of those items.

During a pretrial hearing on McWilliams's motion to suppress evidence, Detective testified regarding both the 2014 and 2022 search warrants, and Detective's affidavit for the 2022 search warrant for the electronic devices was admitted as State's Exhibit 104. In the affidavit, Detective stated that electronic devices were seized from McWilliams's residence in 2014, but that the search warrant "did not expressly authorize further examination of these items beyond seizure" and, "[a]s a result, the items were not previewed or examined during or after collection." Detective added that he believed the electronic items seized from McWilliams's residence during the initial investigation were likely to contain data relevant to the charge brought against McWilliams and should therefore be examined forensically.

This Court specifically concluded, in *McWilliams I* when we reversed McWilliams's conviction, that the evidence of guilt was not overwhelming. *McWilliams*, 564 S.W.3d at 630. No presumption of vindictiveness arises from the State's conduct in charging the additional

9

counts when the 2022 search warrant revealed evidence of additional criminal conduct, and the 2022 investigation was motivated by the State's desire to locate additional evidence to support the original charges. This is not a case where the State amended the original charge, enhancing it to a more serious charge. The facts here establish that the State sought a subsequent indictment for different acts than the initial charge from which McWilliams appealed. "The test is whether the [S]tate had reason to bring charges other than to punish the defendant for exercising his constitutional rights." *State v. Franks*, 702 S.W.2d 853, 855 (Mo. App. E.D. 1985). The State had reason to bring the new charges after McWilliams's successful appeal in *McWilliams I* because it was previously unaware of the additional criminal conduct.

McWilliams did not meet his burden of showing that the State filed the additional charges solely to penalize him for exercising his constitutional rights. Because McWilliams "did not meet his burden of showing that a realistic likelihood of vindictiveness exists, the[S]tate d[oes] not have to come forward with objective evidence justifying the prosecutorial action." *State v. Buchli*, 152 S.W.3d 289, 309 (Mo. App. W.D. 2004). The trial court did not abuse its discretion in denying McWilliams's motion to dismiss.

Point one is denied.

### Point II: Admission of Photograph

In his second point, McWilliams argues the trial court abused its discretion in overruling his objection and admitting Exhibit 33, a photograph of Victim hugging Deputy. McWilliams claims that any probative value the evidence might have had was outweighed by its prejudicial impact because the photograph served only to elicit sympathy for Victim.

The trial court "has broad discretion to admit or exclude evidence during a criminal trial," and this Court will not reverse "absent a clear abuse of this discretion." *State v. Shade*, 657

S.W.3d 282, 292 (Mo. App. W.D. 2022) (quoting *State v. Loper*, 609 S.W.3d 725, 731 (Mo. banc 2020)). "An abuse of discretion occurs only if the circuit court's ruling admitting or excluding evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (citation omitted).

To be admissible, evidence must be both logically and legally relevant. *State v. Denham*, 686 S.W.3d 357, 371 (Mo. App. W.D. 2024). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (citation omitted). "Evidence is legally relevant if its probative value outweighs its costs—prejudice, confusion of the issues, misleading the jury, undue delay, waste of time or cumulativeness." *McWilliams*, 564 S.W.3d at 632 (citation omitted). The determination of legal relevance rests firmly within the sound discretion of the trial court. *Id.*

"Photographs are relevant if they show the scene of the crime, the identity of the victim . . . or otherwise constitute proof of an element of the crime or assist the jury in understanding the testimony." *Id.* (quoting *State v. Rousan*, 961 S.W.2d 831, 844 (Mo. banc 1998)). "[A] photograph is not rendered inadmissible because other evidence may have described what is shown in the photograph." *State v. Aaron*, 665 S.W.3d 401, 405 (Mo. App. E.D. 2023).

Deputy testified that during the cursory interview Victim seemed nervous but Victim was open and forthcoming in answering Deputy's rapport-building questions. When Deputy asked Victim if she knew why she was at the sheriff's office, Victim "immediately started covering her face and didn't want to talk about it." Deputy tried to calm Victim by going back to more "neutral" topics to make Victim more comfortable to talk. Deputy's last inquiry to Victim was

11

whether she had any questions for him, and Victim said she did. Instead of asking a question, Victim hugged Deputy. At the end of the interview, Deputy told Victim she was a smart girl and thanked her. Deputy testified that he said this to Victim because "she was courageous and opened up. Because she was so scared to talk about it, and she overcame that and was able to talk to someone and tell them what had happened. And that was very courageous."

During Deputy's testimony, the State offered Exhibits 29-34, screenshots taken from before, during, and at the conclusion of Deputy's cursory interview with Victim. As relevant to this appeal, Exhibits 30 and 31 depicted Deputy with Victim covering part of her face with her coat, and Exhibit 32, taken from later in the interview, showed Victim with her face uncovered. Exhibit 33 showed Victim hugging Deputy at the interview's conclusion. McWilliams objected to all the exhibits based on relevance, stating that the exhibits did not prove any element of the offenses, that they were not necessary to understand Deputy's testimony, and that Exhibit 33 was designed to elicit sympathy for Victim. The trial court responded, "Is it? The argument can be made that this shows that maybe [Deputy] wasn't objective or something you can make of this whatever you want. How is this a problem for you?" The trial court overruled the objection.

The trial court did not abuse its discretion in admitting the photo of Victim and Deputy hugging. Here, Exhibit 33 was logically relevant because the photograph corroborated Deputy's testimony about the cursory interview, including Victim's conduct and her apparent relief at the interview's conclusion. Exhibit 33 was also legally relevant. While McWilliams argues that the exhibit did not tend to prove or disprove a fact in issue or corroborate other relevant evidence, and that its only purpose was to elicit sympathy for Victim, we disagree.

As the trial court noted, Exhibit 33 arguably favored the defense's case theory, that Victim was fabricating the allegations at Mother's prompting. The defense could have argued

12

that Deputy was biased in his investigation because after Victim's disclosure he thanked Victim, told her that she was smart, and then hugged her. Exhibit 33 was not unduly prejudicial to McWilliams and the trial court did not abuse its discretion in its admission.

Point two is denied.

**Point III: Admission of Expert Testimony**

In McWilliams's third point, he argues that the trial court abused its discretion in overruling his objection to and admitting Detective's testimony about the approximate age range of the child pictured in Exhibit 48, a photograph of an adult hand touching a prepubescent vagina. This photograph served as the basis for the sexual exploitation of a minor and possession of child pornography charges. McWilliams claims that Detective did not have the expertise to opine on the child's age range and the testimony was therefore irrelevant, prejudicial, and invaded the province of the jury.

A trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. *State v. Addie*, 655 S.W.3d 456, 458 (Mo. App. W.D. 2022). "Section 490.065.2 governs the admissibility of expert opinion testimony in criminal cases." *State v. Aaron*, 665 S.W.3d at 406 (citing *State v. Carpenter*, 605 S.W.3d 355, 360 (Mo. banc 2020)). That section provides, in relevant part:

> In all actions except those to which subsection 1 of this section applies:
> (1) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case[.]

13

§ 490.065.2(1)(a)-(d).[2] The trial court acts as a gatekeeper for the admissibility of expert testimony. *Addie*, 655 S.W.3d at 459. "This gatekeeping function involves a 'three-part test: (1) whether the expert is qualified, (2) whether the testimony is relevant, and (3) whether the testimony is reliable.'" *Id.* (quoting *State v. Marshall*, 596 S.W.3d 156, 159 (Mo. App. W.D. 2020)). *See also State v. Suttles*, 581 S.W.3d 137, 147 (Mo. App. E.D. 2019). "Under [s]ection 490.065.2, an expert is qualified by 'knowledge, skill, experience, training or education.'" *Suttles*, 581 S.W.3d at 147 (quoting § 490.065.2(1)).

On appeal, McWilliams's argument focuses on Detective's qualifications to testify about the child's age range in Exhibit 48. McWilliams does not challenge the reliability or relevancy of the expert testimony. Detective did not testify at the trial that Victim was depicted in Exhibit 48.

Detective, a digital forensic examiner employed at the Boone County Sheriff's Office, was assigned to the Cyber Crime Task Force, which is affiliated with the Internet Crimes Against Children (ICAC) task force. Detective testified at trial about the forensic analysis completed on McWilliams's laptop and cell phone recovered from the residence. Detective testified the analysis of McWilliams's laptop revealed a photograph of what "appeared to [him] to be a prepubescent female's vagina with what appeared to be an adult hand touching that vagina." When the State asked Detective what he meant by "prepubescent," Detective explained, "A minor child who has not yet hit puberty." The State then asked what age range that would include and McWilliams objected, stating that Detective did not have the expertise to talk about the specific ages of children because, as McWilliams contended, Detective's training was in

---

[2] Revised Statutes of Missouri (2016).

digital forensics and not in identifying children. The State then asked Detective additional questions to lay a further foundation as to his expertise.

Detective, as a member of the ICAC task force, testified that his main caseload was "dealing with child sexual abuse material," and he saw "a lot of different age ranges" during the course of his work. McWilliams objected again, stating this time that further testimony would invade the province of the jury. McWilliams stated that it was the jury's responsibility to determine whether the image was of a child, and that the jury itself had sufficient information to make that determination. The trial court overruled the objection.

Detective then explained that he estimated the child's age in the photograph to "probably be between 5 and 10." Detective stated that his estimate was based on his experience of viewing a large amount of child sex abuse material, and that he saw infants and teenagers abused and that this "appeared to be neither. So it would have to be between the age range of an infant or a teenage female." We conclude that the trial court did not abuse its discretion in admitting this testimony.

Detective worked with the ICAC task force and had extensive experience dealing with child sex abuse material. Detective testified that he had been in law enforcement since 2011 and had approximately 1,500 hours of law enforcement training and approximately 1,200 hours of digital forensics and cyber investigations related training. Detective attended the National Law Enforcement Training on Child Exploitation Conference in 2017, 2018, 2019, 2021, and 2022. The task force that Detective was a member of primarily focused on child sex abuse and Detective was trained on what to look for in a photograph to determine whether it might involve child sex abuse material. He testified in nine previous criminal cases, including two possession

of child pornography cases, one distribution of child pornography case, a child exploitation case, a statutory rape case, and an attempted enticement case.

The record shows that Detective demonstrated his experience and training in digital forensics, cyber investigations, and child sex abuse charges and was certainly qualified to testify as to his estimation of the child's age in the photograph. "When a witness provides non-scientific, generalized testimony, based upon expert specialized knowledge" and the expert's testimony "rests upon good grounds, based on what is known[,] it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *State v. Minor*, 648 S.W.3d 721, 734 (Mo. banc 2022) (citation omitted); *State v. Vandergrift*, 669 S.W.3d 282, 297 (Mo. banc 2023). *See also Suttles*, 581 S.W.3d at 150 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). Additionally, "[t]he extent of an expert's experience or training in a particular field goes to the weight, not the admissibility, of the testimony." *Minor*, 648 S.W.3d at 733 n.6 (citation omitted).

If McWilliams wished to challenge the extent of Detective's training, and his knowledge base, he could have cross-examined Detective "on this basis to allow the jury to make a more informed determination regarding the weight to give [his] testimony," but McWilliams did not cross-examine Detective on this issue.[3] *Id.*

---

[3] We note, however, that in his closing argument, McWilliams did not argue or challenge the specific age of the child in Exhibit 48 but rather, argued that McWilliams's hand was not in the photo, that others had access to his electronic devices, and that Victim and Mother were not credible.

Accordingly, we find no abuse of discretion in the admission of the expert testimony.[4]

Point three is denied.

## Conclusion

The trial court's judgments are affirmed.

Janet Sutton, Judge

W. Douglas Thomson, P.J., and Karen King Mitchell, J. concur.

---

[4] Federal courts have concluded that the age of a child depicted in child pornography is an appropriate topic for expert testimony. *See, e.g.*, *United States v. Noda*, 137 Fed. Appx. 856, 864 (6th Cir. 2005) (collecting cases, noting, "We, along with several of our sister circuits, have permitted expert testimony on the ages of children depicted to be introduced in child pornography cases and find no error in the admission of testimony from the well-qualified expert in this case.").